Bristol v. Bristol.

---

MAMIE BRISTOL, APPELLEE, V. CLARENCE M. BRISTOL, APPELLANT.

FILED DECEMBER 21, 1921. No. 21834.

1. **Divorce:** EXTREME CRUELTY. "There may be extreme cruelty justifying a decree of divorce without physical injury or violence. Unjustifiable conduct on the part of husband or wife, which utterly destroys the legitimate ends and objects of matrimony, may constitute extreme cruelty." *Myers v. Myers*, 88 Neb. 656.

2. ———: ALIMONY. Alimony, as that term is technically understood, may not be allowed to the husband out of the wife's separate property, in an action for dissolution of the marriage; but where it is shown that the accumulated property in the name of the wife is the result of the joint earnings of the parties, the court will inquire as to the source of the accumulated property, and, in the exercise of a reasonable discretion, will divide the property between the parties, awarding to the husband his equitable portion thereof, and may enter a judgment in favor of the husband for the equitable amount found to be due him.

APPEAL from the district court for Keith county: CHARLES E. ELDRED, JUDGE. *Affirmed as modified.*

*Beeler, Crosby & Baskins* and *L. A. DeVoe,* for appellant.

*Halligan, Beatty & Halligan, contra.*

Heard before LETTON, DEAN and DAY, JJ., DILWORTH and CLEMENTS (E. P.), District Judges.

DAY, J.

This is an action for divorce by Mamie Bristol against

Clarence M. Bristol, on the ground of extreme cruelty. The answer of the defendant denied the charges against him, and prayed that a divorce be denied. The answer also alleged that the plaintiff's property had been greatly enhanced in value as the result of the joint earnings of the parties during the marriage, and prayed that, in the event a divorce was granted, an accounting be taken of the property in the possession of the plaintiff representing the joint efforts of the parties during the marriage, and that he be awarded his equitable portion thereof. The trial court granted the plaintiff a divorce, and also found that a certain automobile truck, carpenter tools, and liberty bonds of the value of $400, all of which were in the possession of the defendant, belonged to the defendant; and, in addition to the above-mentioned items, the trial court awarded the defendant a judgment for $600, and decreed the same "a charge upon the said property of the plaintiff." From this judgment the defendant appeals, complaining that the evidence is not sufficient to support a decree of divorce, but also asking that, if the decree of divorce be sustained, this court upon a trial *de novo* award him a much larger sum as his equitable share of the joint earnings of the parties than that allowed by the trial court. The plaintiff filed a cross-appeal, in which she complains that the evidence is not sufficient to sustain a judgment awarding the defendant any sum whatsoever out of the joint earnings of the parties, and further complaining that in any event the court should not have decreed the amount to be a lien upon her property.

The main questions presented by the record involve an examination of the evidence. It appears that the parties were married on May 4, 1914, and lived together for a period of a little more than five years. For the first two years of their marriage everything went satisfactorily, and they got along well together and prospered.

At the time of the marriage the defendant was 48 years of age, and divorced from a former wife. The plaintiff

was a widow, the mother of several children, two of whom, Robert and Vina, aged, respectively, 15 and 11 years, lived with their mother, and after the marriage made their home with the plaintiff and the defendant. The children, according to the claim of the defendant, were the cause, directly or indirectly, of most of the trouble. The testimony indicates that the defendant, without any apparent good reason, formed a great dislike to Vina, the most serious objection being that she talked too 'much; that she would continually "butt in" to every conversation. Defendant testifies: "I got tired of it, and couldn't bear to have her around me." From matters which appear in the record as trivial in the extreme, he carried his eccentric dislike to Vina to the extent of refusing to eat anything she had cooked, and on one occasion refused to eat pop-corn which she had prepared. He treated her as an entire stranger; refused to ride in the automobile with her; and on one occasion, when the roads were muddy and she was unable for that reason to use her wheel in going to school, he refused to allow her to ride with him, and, although he passed her about a mile from the schoolhouse, trudging through the mud, he did not invite her to ride with him. The conduct of the defendant toward the daughter was a source of great mortification to the plaintiff, and led to some remonstrance on her part as to his actions. As time went on the defendant manifested a sullen and grouchy disposition toward the plaintiff. He refused to take her to town, or to church, or any place else, especially if the children were to go along. In one of his sullen moods defendant took his gun and announced that he was going to kill himself. On another occasion, following some words, he went out after dark, saying he was going to kill himself and end it all. He fired off his revolver, and remained out all night, appearing, however, the next morning for breakfast. The conduct of the defendant towards the plaintiff and her children grievously wounded the plaintiff's feelings, and so preyed upon her mind that she became

nervous and sick, and was confined to her bed for a period of more than six weeks.

We deem it unnecessary to go into further detail as to the actions of defendant, as enough has been said to illustrate the general condition of the home life. There is no testimony that the defendant was guilty of physical abuse to either the plaintiff or the children, but we are entirely satisfied from the record that his unjustifiable conduct was such as to utterly destroy the legitimate ends and objections of matrimony, and constitute extreme cruelty as that term has been defined by the repeated decisions of this court. For cases involving this principle, see, *Myers v. Myers,* 88 Neb. 656, and *Miller v. Miller,* 89 Neb. 239.

We come now to a consideration of that branch of the case affecting the property rights of the parties. It appears that at the time of the marriage the plaintiff was possessed of considerable property. She was the owner of a farm of 320 acres in Keith county, an 80-acre farm in Deuel county, a house with 2 acres of ground in the town of Big Springs, a school land lease on 160 acres, 27 head of cattle, 12 horses, and household goods of moderate value. She was indebted in the sum of $200. The defendant, who had been conducting a garage, owned two second-hand automobiles of the aggregate value of $500. After the marriage, and with the full approval of the plaintiff, the parties made their home upon the plaintiff's properties. By common consent the defendant assumed the complete management of the farms, buying and selling as his judgment dictated, and using the earnings in the support of the family, in making improvements on the farms, and in buying necessary machinery for use thereon. In addition to work performed upon the farms, the defendant earned $1,300 by outside work, all of which went into the common fund. While the ultimate result of the defendant's efforts did not show a very marked success, it is not denied that he worked diligently and faithfully, and exercised his best judgment in the management of

the properties.   It is impossible to strike anything like an exact balance showing the net result of the defendant's efforts in enhancing the value of the plaintiff's properties. His testimony places it in excess of $8,000, but, in doing this, he overlooks the fact that during the existence of the marriage a portion of the plaintiff's property was sold and the proceeds used in furtherance of their farming enterprises, and that also the plaintiff had become responsible for debts in excess of $3,600 for materials which went to the improvement of the properties, and for living expenses.   From a careful analysis of the testimony, we conclude that the defendant contributed to the community property approximately $1,650.   The trial court sought to give the defendant this amount by decreeing to him the automobile truck and tools, valued at $650, and the liberty bonds, worth $400, and rendered a judgment for the defendant for the balance of $600.

It is urged by the plaintiff that there is no authority in law for the court to allow the defendant alimony out of the plaintiff's property.  At common law, upon a dissolution of the marriage, the husband could not obtain alimony out of the wife's separate property, and our statute in this respect has not enlarged the common-law rule. In this case, however, the defendant does not seek alimony out of the plaintiff's property, as that term is technically understood.   He seeks rather to recover his equitable share of the accumulated property in the possession of the plaintiff which accrued through their joint efforts.   This he may do, where it is shown that the accumulated property in the name of the wife is the result of the joint earnings of the parties, and in such case the court will inquire as to the source of the accumulated property, and in the exercise of a reasonable discretion will divide the property between the parties, awarding the husband his equitable portion thereof, and may enter a judgment in favor of the husband for the equitable amount found to be due him.   This principle has been recognized in *Myers v. Myers*, 88 Neb. 656, and in *Miller*

*v. Miller,* 91 Neb. 500. In the *Miller* case, it was held that the trial court should consider all of the facts in evidence as to the property rights of the parties, the source from and the manner in which their property was accumulated, and should exercise a reasonable discretion in dividing the property between them.

From an examination of the testimony, we are of the opinion that the judgment of the trial court upon the issue of divorce, as well as the division of the property rights, is sustained by the evidence. But we think that the court erred in decreeing that the amount of $600 should be "a charge upon the said property of the plaintiff." Literally speaking, the decree of the trial court would be a lien upon the plaintiff's personal as well as her real property, including the homestead. The language of the decree is too broad, and should not be extended beyond such lien as the law creates in an ordinary judgment. That part of the decree, "and the same is decreed a charge upon the said property of the plaintiff," should be eliminated. As so modified, the judgment is affirmed; costs to be taxed to appellant.

AFFIRMED AS MODIFIED.