CECILE A. BENTON, APPELLEE, v. JOHN M. BENTON, APPELLANT.

145 N. W. 2d 576

Filed October 21, 1966. No. 36261.

Jack E. Lyman, for appellant.

Robert M. Harris, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ., and NEWTON, District Judge.

SPENCER, J.

Plaintiff, Cecile A. Benton, brought suit for divorce against defendant, John M. Benton, on the ground of extreme cruelty. Defendant denied the allegations of the petition and cross-petitioned for a divorce. The trial court dismissed the cross-petition, and granted a divorce to the plaintiff. The defendant has perfected an appeal, attacking the sufficiency of the evidence to support the decree.

Plaintiff, who had a son by a prior marriage, and defendant were married February 26, 1950. There are two living daughters the issue of this marriage, one born March 4, 1951, and the other born June 7, 1958. Plaintiff's son by the previous marriage, who was 18 at the time of the hearing in October 1965, had been raised by the parties.

Plaintiff's petition alleges in substance that the defendant is addicted to excessive drinking, is quarrelsome, mean, and abusive, has falsely accused the plaintiff of misconduct, and has failed to properly support his family. Plaintiff's testimony would tend to support some of her allegations. There is no doubt, however, but that plaintiff's son, who at the time of the trial was no longer in the home, has been at the root of most of their difficulty. The plaintiff accused the defendant of being

unnecessarily hostile to her son, and resented his attempts to discipline the boy. During the 3½ years preceding the trial, there is no question but that the boy was in serious need of discipline, and the record would support an inference that the mother was too indulgent.

The defendant in recent years and during most of their marriage has been on the road, away from home approximately half of the time. He has been steadily employed throughout the marriage, and on the record amply provided for his family within his means until the separation of the parties in April 1964. At that time the parties agreed to separate for a period to see if they could readjust their situation. The petition for divorce was filed November 24, 1964.

"A divorce case is for trial de novo on the record in the Supreme Court which is required to reach independent conclusions of fact without reference to findings made by the trial court." Kuta v. Kuta, *ante* p. 443, 143 N. W. 2d 751.

Plaintiff's corroborating witnesses were her son, her mother, and the 14-year-old daughter of the parties. The son's testimony is limited to answering allegations made by the defendant relative to his difficulties with the plaintiff's son, and is not in any way corroborative of the plaintiff's testimony except as it clearly indicates that the boy was the prime cause of the difficulty between the parties.

Plaintiff's mother, who was a resident of Iowa, in recent years has visited the home only for brief periods not more than twice a year, and had not been in the home for 11 months prior to the separation of the parties. She does corroborate the fact that the defendant drank, but her testimony is wholly insufficient to show excessive drinking on even one occasion. She testified that on the last occasion she was in the home the parties quarreled, but when required to be specific, she testified as follows: "A He just fussed about the bills that had to be paid, that was paid out, that she was just spending

the money, wasting it. Q Were there more conversations that week between the parties that you were present at? A I can't remember everything that was said. Q Were there other subjects discussed that you recall? A Well, he always complained about David, his doings and everything, too."

The corroboration of the 14-year-old daughter on the quarreling is essentially the following: "Q Karla, have you ever been present in the home when there has been an argument between your mother and father? A Yes, I have. Q Has this been on more than one occasion? A Yes, I have—yes. Q When are you first aware—how far back can you remember that they argued? A Oh, about a year ago—well, I'm not for sure. Q Karla, when your mother and father quarrel, do you know what they quarrel about? A Well, all sorts of things, but mostly my brother. Q I see, and this is your brother, David, you are talking about? A Yes. Q was there any quarreling about liquor? * * * A I'm not for sure."

The daughter was questioned on defendant's use of liquor as follows: "Q Do you know, Karla, when your father was still living in the home whether or not he used alcoholic liquor?" She answered: "A *He used it mostly when he was gone,* but he did drink when he was home." (Italics supplied.) She further testified: "Q Did you see him drink any liquor? A Yes, I did. Q Could you tell when he had been drinking liquor? A Yes, I could. Q How could you tell? A Well, sometimes he staggered and, well, by his voice mostly. Q Was his voice different when he had been drinking liquor? A Yes, kind of slurred together. Q Did you see him drink liquor more than once? A Yes, sir. Q Do you have any idea how often you saw him drink liquor? A No, sir." There is no other testimony which could be considered corroborative of plaintiff's testimony.

It is undisputed that the defendant was a user of intoxicants, but this record does not support a finding that he habitually used intoxicants to excess. The mere

use of intoxicants is not a ground for divorce in this jurisdiction. Nor can we say defendant's use of intoxicants was of such a character as to constitute extreme cruelty. It is undisputed that plaintiff also drank intoxicants. She described herself as a social drinker. The defendant worked steadily, was a territory manager for his company, and received periodic raises. There is no corroborative evidence that his drinking proclivities interfered with either his employment or their marriage relationship.

Corroborative evidence is required of the acts or conduct asserted as a ground for divorce. Laughrey v. Laughrey, 171 Neb. 132, 105 N. W. 2d 576.

A general rule by which to measure the exact amount of the degree of corroboration required in a divorce case cannot be formulated, and each case must be determined on its own facts and circumstances. Read v. Read, 179 Neb. 637, 139 N. W. 2d 829.

On the record herein, we cannot say that the plaintiff has proved her allegations of extreme cruelty. To constitute extreme cruelty, the unjustifiable conduct must be such as to destroy the legitimate aims and objects of matrimony. Workman v. Workman, 164 Neb. 642, 83 N. W. 2d 368.

Mere incompatibility does not constitute extreme cruelty. Smith v. Smith, 160 Neb. 120, 69 N. W. 2d 321.

The trial court allowed plaintiff an attorney's fee of $500, which we affirm as adequate herein. We make no further allowance herein, but do tax the costs to the defendant.

For the reasons given, the judgment herein is reversed, and the cause remanded with directions to dismiss the plaintiff's petition.

REVERSED AND REMANDED WITH DIRECTIONS.